<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAVED MALIK,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant | Case No. 2:25-cv-13929 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Javed Malik's ("Plaintiff") appeal of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). (ECF No. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed and considered the submissions filed in connection with the appeal and having declined to hold oral argument in accordance with Local Civil Rule 78.1(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **VACATED** and the matter is **REMANDED** for additional administrative proceedings and further evaluation consistent with this Opinion.

I.    **BACKGROUND**

A.    **Procedural History**

This matter arises out of the Commissioner's final decision denying Plaintiff's application for DIB dated June 28, 2024. (ECF No. 1.) On October 23, 2021, Plaintiff applied for DIB alleging disability due to severe impairments beginning April 28, 2021, including but not limited to poor eyesight, diabetes, heart problems, and disturbed kidney functions. (*See* Transcript of Proceedings[1] ("Tr.") (ECF No. 4) at 224–30, 295.) Plaintiff also applied for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* (*See* Tr. at 224–43.) The Commissioner denied the application for both DIB and SSI on August 21, 2023 (*see* Tr. at 141–43), and again upon reconsideration on August 21, 2023 (*see* Tr. at 139–43).

Plaintiff, through counsel, then filed a written request for a hearing. (*See* Tr. at 144.) Administrative Law Judge ("ALJ") Ricardy Damille ("ALJ Damille") held a hearing on March 1, 2024. (*See* Tr. at 31–77.) In a decision dated June 28, 2024, ALJ Damille found Plaintiff has the following severe impairments, which neither meet nor equal the severity of a list impairment: "degenerative disc disease of the lumbar and cervical spine; bilateral hip impairment; history of coronary artery disease status post stent; diabetes; diabetic neuropathy; and diabetic macular edema." (Tr. at 19–20.) ALJ Damille determined Plaintiff has a residual functional capacity ("RFC") capable of "light work," except Plaintiff can stand and/or walk four hours in an eight-hour workday and can "occasionally" balance, stoop, kneel, and crouch but was "restricted from work involving frequent depth perception and frequent far acuity." (Tr. at 21.) Based on his age, education, and RFC, ALJ Damille determined Plaintiff was capable of performing his past work

---

[1] The administrative record is set forth in this transcript. (*See generally* ECF No. 4.)

2

as an ice cream vendor, "which is described as medium, performed at light [work]." (Tr. at 21–24.) The decision became final when the Appeals Council declined review on June 6, 2025. (Tr. at 1–6.)

On July 30, 2025, Plaintiff appealed the final decision denying his application for DIB with this Court pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff does not appeal the final decision denying his application for SSI pursuant to 42 U.S.C. § 1383(c)(3). (*See id.*) On November 12, 2025, Plaintiff filed his brief pursuant to Supplemental Rule 6 for Social Security Actions under 42 U.S.C. § 405(g). (ECF No. 6.) The Commissioner filed an Opposition on November 19, 2025. (ECF No. 8.) Plaintiff has not filed a response to the Opposition.[2]

**B.      Administrative History**

Juan Carlos Cornejo, D.O., conducted a consultative examination on behalf of the Commissioner. (Tr. at 630–45.) At the time, Plaintiff complained of shortness of breath, swelling, nausea, occasional chest pain, and numbness and tingling in his hands and feet. (Tr. at 633.) Plaintiff reported he was first diagnosed with diabetes in 2002, kidney disease and decreased visual acuity in 2010, and heart disease in 2017, for which he underwent stent placement. (Tr. at 633.) Dr. Cornejo diagnosed Plaintiff with the following: (1) history of cardiovascular disease/status-post stent; (2) history of diabetes; (3) history of and diabetic neuropathy; and decreased visual acuity. (*See* Tr. at 636–37.) Based on same, Dr. Cornejo concluded:

---

[2] Pursuant to the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), a reply brief was due within fourteen days of the Opposition—December 3, 2025.

> The claimant would have difficulty with frequently bending and turning his back. He would be able to occasionally bend his back. He would have difficulty with prolonged walking and standing and may require a cane for long distances. However, he would be able to walk without a cane for short distances. He would have difficulty with bending, kneeling, crouching, and crawling. He would have difficulty climbing steps and stairs. He would have difficulty with heavy lifting. He would be able to sit for a reasonable amount of time with needed breaks. No significant balance limitations were observed during the evaluation. He has good use of his upper extremities for movements such as reaching above his head. He has good functionality of his right and left hands. The claimant would be able to handle fine, small, and medium sized objects. The claimant has no significant limitations to picking, grasping, pinching, and manipulating objects.

(Tr. at 637.)

Thomas W. Materna, M.D., completed an ocular examination on behalf of the State. (Tr. at 626–29.) At the time, Plaintiff reported he had "focal laser treatment in both eyes and intra vitreal injections in both eyes." (Tr. at 627.) Dr. Materna diagnosed Plaintiff with "a best corrected visual acuity 20/40 OD for distance, and 20/60-1 O83 for distance." (Tr. at 627)

On April 11, 2024, ALJ Damille conducted a hearing, which was attended by vocational expert Mary Anderson. (Tr. at 31–77.) Anderson provided classifications for Plaintiff's past work as "cook, fast food," "floor maintenance worker," "gas station attendant," and "ice cream vendor." (Tr. at 61.) When asked by ALJ Damille what, if any, work a hypothetical individual of the same age, education, and experience as Plaintiff limited to "light work" and restricted from work involving "frequent" depth perception or far acuity could perform, Anderson opined such an individual could work as both a gas station attendant and an ice cream vendor. (*See* Tr. at 62.) However, Anderson claimed such an individual could not work as a gas station attendant if restricted to standing or walking for four hours out of an eight-hour day. (*See* Tr. at 64.)

4

In a written decision, dated June 28, 2024, ALJ Damille found Plaintiff was not disabled under the meaning of the Act beginning April 28, 2021. (Tr. at 17–30.) Consistent with the five-step sequential evaluation process for DIB benefits, *see infra* Section III, ALJ Damille determined Plaintiff has not been engaged in substantial gainful activity since April 28, 2021, and has the following severe impairments: "degenerative disc disease of the lumbar and cervical spine; bilateral hip impairment; history of coronary artery disease status post stent; diabetes; diabetic neuropathy; and diabetic macular edema." (Tr. at 19–20.) ALJ Damille found Plaintiff's severe impairments, both individual or in combination, did not meet or equal the severity of one of the list impairments in 20 C.R.F. Part 404, Subpart P, Appendix 1 ("Listing"). (*See* Tr. at 20.) ALJ Damille determined Plaintiff had an RFC capable of "light work" and can stand and walk for four hours in an eight-hour day but "is restricted to work involving frequent depth perception and frequent far acuity." (Tr. at 21–24.) In support of same, ALJ Damille assigned no specific evidentiary weight to any prior medical findings or opinions. (Tr. at 23.) Based on his age, education, prior work experience, and RFC, ALJ Damille determined Plaintiff is capable of performing his past work as an ice cream vendor relying upon Anderson's testimony. (Tr. at 24.)

## II.   STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A district court must affirm an ALJ's decision if it is

5

supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019). To determine whether an ALJ's decision is supported by substantial evidence, a court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, a court may not set an ALJ's "decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.    THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

6

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of SSI and DIB. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.* Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R. § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if a claimant's impairment(s) is found to be severe, the ALJ then determines whether the impairment(s) meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his impairment(s) is equal in severity to, or meets, one of the impairments on the Impairment List,

the claimant has satisfied his burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, then the ALJ must consider whether the combination of impairments equals any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated in 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) or 20 C.F.R. § 404.1520c (for claims filed after March 27, 2017).

Claimants are not disabled if their RFC allows them to perform their past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). However, if the claimant's RFC prevents him from doing so, or if the claimant has no past relevant work, an ALJ proceeds to the fifth and final step of the process. 20 C.F.R. § 404.1520(a)(4)(g). The final step requires the ALJ to "show there are other

jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he or] she is capable of performing work and is not disabled." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1523. An ALJ typically seeks the assistance of a vocational expert at this final step. *Plummer*, 186 F.3d at 428.

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146 n.5. An ALJ bears the burden of proof for step five. *Sykes*, 228 F.3d at 263.

On appeal, the harmless error doctrine requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, they might have proven their disability. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in their favor, based on the existing record. If the plaintiff cannot, it is unlikely they will meet their burden of showing an error was harmful. *See, e.g.*, *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380–81 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc. Sec.*, Civ. A. No. 19–21970, 2021 WL 1207793, at *7 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine

whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing *Schaudeck*, 181 F.3d at 431); 42 U.S.C. § 405(g).

## IV.   DECISION

At step four in the disability determination process, an ALJ must assess the claimant's RFC and compare it to his past relevant work. 20 C.F.R. §§ 404.1520(e), (f); *Bowen*, 482 U.S. at 141. The claimant is not disabled if he retains the capacity to perform any of his past relevant work "either as the [claimant] actually performed it or as the work is generally performed in the national economy." *Social Security Rule ("SSR") 24-2P*, 2024 WL 3291790, at *2 (June 6, 2024). The claimant bears the burden of proof on step four, *see Sykes*, 228 F.3d at 263, including to present the facts necessary for the ALJ to assess the claimant's RFC, *see Bowen*, 482 U.S. at 146 n.5. On appeal, a claimant must show: (1) an error occurred; and (2) but for that error, he might have proven his disability. *See Holloman*, 639 F. App'x at 814. If a claimant believes an error was made, the claimant "must clearly identify the error and explain how the error actually 'affect[ed] [his] "substantial rights."'" *Id.* at 814 n.3 (first alternation in original) (quoting *Shinseki*, 556 U.S. at 407).

In determining a claimant's RFC, the ALJ is required to consider all relevant medical evidence from acceptable sources and "may not make speculative inferences from medical reports." *Plummer*, 186 F.3d at 429. "Although the ALJ may weigh the credibility of the evidence,"

*Burnett*, 220 F.3d at 121, "the ALJ may not reject evidence for no reason or for the wrong reason," *Yensick v. Barnhart*, 245 F. App'x 176, 181 (3d Cir. 2007) (internal quotation marks omitted); *see also Plummer*, 186 F.3d at 429 ("[A]n ALJ is not free to employ [his] own expertise against that of a physician who presents competent medical evidence."). Rather, the ALJ "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence," *Burnett*, 220 F.3d at 121, pursuant to the framework articulated in 20 C.F.R. § 404.1520c. In evaluating the credibility of a medical opinion, the most important factors are its supportability and consistency with evidence from other sources. 20 C.F.R. § 404.1520c. Other relevant factors include, but are not limited to, whether the medical source received education or training in a relevant area of specialty, personally examined the claimant, or is familiar with the disability program's policies and requirements. 20 C.F.R. § 404.1520c(c)(3)(v), (4), (5).

Plaintiff claims the following findings are not supported by substantial evidence in the record: Plaintiff has an RFC capable of "light work" (ECF No. 6 at 14–29); and Plaintiff has the level of capacity needed to perform his past relevant work as an ice cream vendor (*id.* at 7–14, 27–28). Specifically, Plaintiff argues ALJ Damille failed to sufficiently consider Plaintiff's chronic kidney disease, neuropathy, and diabetes under step four (*id.* at 23, 28); failed to adequately afford the appropriate controlling weight between the opinions of the consultive examiners and his subjective complaints (*id.* at 23–26); and failed to consider whether Plaintiff individually retains the RFC to perform his past relevant work as an ice cream vendor (*id.* at 27–28).

However, before the Court can substantively assess these issues, the Court finds the matter must be remanded to the ALJ to conduct a more meaningful first step analysis, *i.e.*, whether Plaintiff engaged in substantial gainful activity prior to and following the disability onset date. *See Merendino v. Comm'r of Soc. Sec.*, Civ. A. No. 15-3900, 2016 WL 3041849, at *4, 6 (D.N.J. May

11

27, 2016); *see also Sandoval v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 22-8017, 2023 WL 5013113, at \*3 (D. Ariz. Aug. 7, 2023); *Sapp v. Comm'r of Soc. Sec.*, Civ. A. No. 20-1678, 2021 WL 457887, at \*4 (D.N.J. Feb. 9, 2021). At step one, the ALJ is required to determine whether the claimant has shown he is not engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *see Bowen*, 482 U.S. at 140. This step is mandated by law and "cannot be bypassed without a conclusive determination." *Merendino*, 2016 WL 3041849, at \*5; *see also Abramson v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 19-362, 2020 WL 7022260, at \*8 (D. Ariz. Nov. 30, 2020); *Rollins Kiddy v. Colvin*, Civ. A. No. 13-674, 2015 WL 898270, at \*18 (N.D. Okla. Mar. 3, 2015) (reviewing and remanding *sua sponte* based on the lack of a conclusive step one determination). This is because, in relevant part, "step one informs the following four steps." *See Merendino*, 2016 WL 3041849, at \*5 (noting the five-step analysis "is sequential for many reasons").

Here, at step one, ALJ Damille assumed Plaintiff's self-employment as an ice cream vendor with the help of his son "did not rise to the level of substantial gainful activity." (Tr. at 19.) Notably, ALJ Damille stated it was not necessary to determine whether such work constituted as substantial gainful activity under step one as there existed an alternative basis for finding Plaintiff was not disabled, *i.e.*, Plaintiff was capable of performing said work as an ice cream vendor with the help of his son "as actually performed" under step four. (Tr. at 19, 24.) ALJ Damille described the actually performed work as a "two-man job," in which Plaintiff "mainly drove the truck while someone else sold the ice cream." (Tr. at 24.) The record establishes both prior to and following the alleged onset date, Plaintiff worked with family members to load and distribute the ice cream,

12

typically either his wife or his son. (*See* Tr. at 21–22, 45, 297.) However, the record does not establish whether his wife and son's assistance was paid or unpaid.[3] (*See generally* Tr.)

Social Security Rule ("SSR") 83-34 provides a two-step analysis to determine a claimant's substantial gainful activity based on self-employment income. 1983 WL 31256, at *4 (1983); *accord Rubinson v. Comm'r of Soc. Sec.*, 96 F. Supp. 3d 386, 396 (D.N.J. 2015). An ALJ "must first determine the individual's net income." *SSR* 83-84 at *4. Once determined, an ALJ must then deduct from the net income the monetary value of other relevant factors, such as "the value of any significant amount of unpaid help furnished [to] the [claimant] by a spouse, children, or others." *See id.* at *1, 4 ("Self-employment income alone is not a reliable factor in determining [substantial gainful activity], since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits."). "In estimating the amount to be deducted for unpaid help, it is necessary [for] [the ALJ to] consider the prevailing wage rate in the community for similar services." *Id.* at *5. Absent same, an ALJ cannot find past relevant self-employment was a substantial gainful activity "as actually performed." In other words, if after deducting the value of the unpaid help a claimant's self-employment would constitute as substantial gainful activity under step one, then a claimant is not disabled if he retains the capacity to perform same as the claimant actually performed it under step four. *See SSR 24-2P*, 2024 WL 3291790, at *2 (2024); *see also Merendino*, 2016 WL 3041849, at *6. In contrast, if the self-employment with unpaid help would not constitute

---

[3] The record establishes Plaintiff was largely self-employed as an ice cream vendor between 2016 and 2020. (*See* Tr. at 80, 86, 101, 106, 113, 123; *but see* Tr. at 261 (noting Plaintiff was briefly employed by Amazon in 2020 earning a total of $402.87).) During this period, with this assistance of his wife and son, Plaintiff earned an average yearly net income of $15,579.50. (*See* Tr. at 248, 258–62, 273–76, 279; *see also* Tr. at 73 (stating the substantial income threshold was $16,200 per year in 2022).)

as substantial gainful activity under step one, then it cannot constitute as such under step four. *See*

*SSR* 83-34, 24-2P.

Accordingly, as the Court can neither substantively assess the step four or five analyses absent a conclusive step one determination nor *sua sponte* determine whether Plaintiff engaged in substantial gainful activity under step one, the Court must vacate the final decision and remand the matter to the ALJ to conduct a more meaningful first step analysis. To the extent errors may have occurred, however, such errors may be remedied by the ALJ on remand.

V.     CONCLUSION

For the reasons set forth above, the Commissioner's decision is **VACATED** and the matter is **REMANDED** for additional administrative proceedings and further evaluation consistent with this Opinion. An appropriate order follows.

Date: April 23, 2026                                    */s/ Brian R. Martinotti*
                                                         **HON. BRIAN R. MARTINOTTI**
                                                         UNITED STATES DISTRICT JUDGE

14